TOWN OF HOMER, D/B/A HOMER MEMORIAL HOSPITAL AND THEOLA CORELY AND ALICE GANDY, INDIVIDUALLY AND ON BEHALF OF ALL THOSE INDIVIDUALS SIMILARLY SITUATED
v.
MUNICIPAL EMPLOYEES' RETIREMENT SYSTEM OF LOUISIANA, AND BOBBY HEBERT, CLAIRE SARRADET, JOHN A. BERTHELOT, DUDLEY DIXON, GERALD JOHNSON, BILL MULKEY, AND JAMES PETITJEAN, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE BOARD OF TRUSTEES OF THE MUNICIPAL EMPLOYEES' RETIREMENT SYSTEM OF LOUISIANA.
No. 2007 CA 0899.
Court of Appeals of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
RANDY P. ZINNA, Attorney for Defendants/Appellants Municipal Employees' Retirement System of LA, and Bobby Hebert, Claire Sarradet, John A. Berthelot, Dudley Dixon, Gerald Johnson, Bill Mulkey and James Petitjean, Individually and In Their Official Capacities as Members of the Board Of Trustees of the Municipal Employees' Retirement System of LA.
L.J. HYMEL, Jr., and JAMES H. COLVIN, JR., PAMELA N. BREEDLOVE, Attorneys for Plaintiffs/Appellees Town of Homer, Inc., d/b/a Homer Memorial Hospital, Theola Corley and Alice Gandy.
JAMES H. COLVIN, JR., PAMELA N. BREEDLOVE, Attorneys for Intervenors/Appellees, Rhonda Ward and Valeria Tuggle.
Before CARTER, C.J., PETTIGREW AND WELCH, JJ.
CARTER, C.J.
This is an appeal of a trial court judgment granting summary judgment and ordering a state retirement system to transfer a total of $3,928,695.15 to an employer's newly established retirement plan.

FACTS AND PROCEDURAL HISTORY
The plaintiffs in this class action are the Town of Homer, Inc., d/b/a Homer Memorial Hospital ("HMH"), Theola Corley, and Alice Gandy.[1] The defendants are the Municipal Employees' Retirement System ("MERS") as well as its board members, sued individually and in their official capacities.[2] MERS is a statewide retirement system established by LSA-R.S. 11:1732, et seq.
In 1969, HMH and MERS entered a contract whereby MERS agreed to provide retirement benefits to eligible officers and employees of HMH. HMH agreed to remit to MERS a percentage of each officer's or employee's salary that it would collect from the officer or employee (the employee contribution). HMH also agreed to pay to MERS a percentage of each officer's or employee's salary (the employer contribution). The percentage to be paid by the employee and employer has substantially increased since 1969.
Due to increasing rates, HMH opted to terminate the contract and withdraw from MERS. HMH complied with the contract termination terms of the contract by giving the required two years notice to MERS. MERS informed HMH that it does not provide a spin off of assets or liabilities to successor retirement plans. MERS intended to keep all employer contributions made by HMH. All employees with less than ten years service would be directly refunded their employee contributions. MERS intended to keep their employee contributions made by employees with more than ten years service unless the employee requested a refund.
HMH initiated this class action against MERS based on its refusal to refund the relevant employee and employer contributions.[3] HMH ultimately moved for partial summary judgment on the issue of contractual liability and for damages. HMH contended it and the class members are entitled to have all of the relevant employer and employee contributions transferred to the new retirement plan created by HMH. Further, HMH contended that there is no constitutional, statutory, regulatory, or contractual authority that provides a basis for MERS to keep all employer contributions. MERS opposed the motion, claiming that the only mechanism for it to distribute employer contributions is LSA-R.S. 11:143, and that there were dozens of issues regarding whether it could transfer the employer contributions to HMH's new retirement plan under the statute. HMH filed a supplemental memorandum with attached exhibits that evidenced the nature of the new retirement plan and argued that MERS could make a transfer to the new plan.
After reviewing all of the evidence, the trial court granted HMH's motion for partial summary judgment and ordered MERS "to pay `in trust' to the Homer Memorial Hospital Cash Match Plan a total of $3,928,695.15, which includes $1,804,314.90 in employee contributions and $2,124,380.25 in employer contributions, for the benefit of the class members." The trial court attached as an exhibit to its judgment a chart detailing the amounts of employee and employer contributions owed with regard to each class member.
MERS has suspensively appealed, contending the trial court erred in ordering it to distribute or transfer the employer contributions. MERS has not challenged that portion of the trial court's judgment ordering it to distribute or transfer the employee contributions.[4] Neither has MERS challenged the trial court's calculation of the total amount of employer contributions. The sole issue on appeal is whether the trial court erred in ordering MERS to distribute or transfer employer contributions to HMH's new retirement plan.

DISCUSSION
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966B.
On appeal, MERS essentially argues that it is not authorized by law to transfer or distribute the employer contributions to HMH's new retirement plan, which is a Government Eligible 457 Prototype Plan drafted under the provisions of Internal Revenue Code, Section 457. MERS emphatically avers that under Louisiana law, the only mechanism for the distribution of employer contributions received by MERS is LSA-R.S. 11:143, which provides, in pertinent part:
A. (1) As provided in Subsection F of this Section, any person who is in active service and is a member of any public retirement or pension system, fund, or plan maintained primarily for officers and employees of the state of Louisiana or of any political subdivision thereof, or of any district, board, commission, or other agency of either, or of any other such public entity who has been a member of such system, fund, or plan for at least six months and who has membership credit in or who transferred service credit from any other such system, fund, or plan shall have the option of transferring all of his credit from every such system, fund, or plan to the system, fund, or plan he is currently contributing to or to the system to which he last contributed.
. . . .
C. Except as provided in Paragraph (5) of this Subsection and notwithstanding the provisions of law to the contrary, the system, fund, or plan from which the person transfers such credit shall transfer to the receiving system, fund, or plan an amount which is the lesser of the following:
(1) The greater of, the actuarial cost to the receiving system for the service transferred, or all employee contributions from the transferring system.
(2) All employee contributions, all employer contributions, provided that in any system, fund, or plan, where the employer contribution is not a fixed percentage of the employees earnings, an employer contribution which is equal to the employee contribution, in addition to a sum, representing interest, equal to the board-approved actuarial valuation rate of the transferring system, fund, or plan compounded annually, of all contributions per annum for each year of contribution to the date of transfer.
G. (1) A member of a receiving system, fund, or plan must make a written application to the receiving system, fund, or plan requesting a transfer under this Section.
MERS contends the statute provides only for transfers between defined benefit pension plans, and that even if the statute applies, section C restricts transfers to the amount of employee contributions only.
In analyzing MERS' argument and LSA-R.S. 11:143, we are mindful of the following principles of statutory construction set forth by our supreme court in City of New Orleans v. LA Assessors' Retirement and Relief Fund, 05-2548 (La. 10/1/07), ___ So.2d ___, ___:
[L]egislation is the solemn expression of the legislative will and, therefore, the interpretation of a law primarily involves the search for the legislature's intent. The starting point in ascertaining that legislative intent is the language of the statute itself. In examining that language, words and phrases are to be read in their context and to be accorded their generally prevailing meaning. LSA-C.C. art. 11; LSA-R.S. 1:3. It is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the legislature's intent. LSA-C.C. art. 9; LSA-R.S. 1:4. When the language of a law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. Finally, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. (Citations to case law omitted.)
Applying those principles, we find LSA-R.S. 11:143 to be inapplicable to this dispute.
Louisiana Revised Statute 11:143 consistently employs the terms "person" and "member." When the statute is read in its entirety, it clearly applies to situations in which an individual person or member is seeking to transfer credits between two public retirement systems. In fact, for any transfer to take place, the statute requires the individual person or member to make a written application. The situation sub judice is not one in which individual persons or members made a voluntary affirmative choice to transfer their credits from MERS to another retirement system. Moreover, this is not a case in which individual persons or members have made individual applications to transfer their credits. Rather, HMH has terminated its contract and withdrawn from MERS, electing to provide its employees benefits via another retirement plan.[5]
MERS' interpretation of the statute and its proposed application to situations where the employer withdraws from the system would require courts to impute the actions of the employer to the employee and blindly ignore the contractual relationship between MERS and the employer. This would have the absurd consequence of punishing a group of employees for the employer's choice of withdrawing from MERS, while rewarding MERS with millions of dollars in employer contributions. Further, MERS' interpretation would have the practical effect of prohibiting employers from withdrawing from MERS, as withdrawal would cause employers to fund their employees' retirement benefits a second time. In this case, MERS' overreaching interpretation would yield it a profit of $2,124,380.25 and require HMH to fund its employees' retirement benefits a second time.
By its plain language, LSA-R.S. 11:143 does not address or apply to situations in which the employer withdraws from MERS and seeks to have MERS transfer its employer contributions to its new retirement system. This is consistent with the statute's clear and unambiguous language and avoids absurd consequences.
Finally, on appeal MERS argues that the terms of the contract between HMH and MERS provide that employer contributions are not refunded. The contract does provide that MERS will keep employer contributions made on behalf of terminated employees. However, the employees' employment with HMH was not terminated; rather, their relationship to MERS was severed by HMH's withdrawal from the system. The terminated employee provision is wholly inapplicable here. In fact, there is no provision of the contract that addresses the financial consequences of terminating the contract.
After de novo review, we find no contractual, statutory, or constitutional authority entitling MERS to retain the employer contributions at issue. We disagree with MERS' position that the absence of any contractual, statutory, or constitutional authority requiring the transfer of employer contributions translates to a prohibition against MERS making such a transfer. We also disagree that transferring the employer contributions at issue would violate MERS' fiduciary duties to its members. Simply stated, no legal authority entitles MERS to profit from HMH's withdrawal from its system by retaining the employer contributions. HMH established that its new plan is eligible to receive the transfer, thus summary judgment is appropriate.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal in the amount of $1,527.00 are assessed to the Municipal Employees' Retirement System of Louisiana.
AFFIRMED.
NOTES
[1] Corley and Gandy sued as class representatives, individually and on behalf of all other persons similarly situated. The class action procedure is not relevant to this appeal. For ease of reference, we will refer to HMH as the plaintiff herein.
[2] For ease of reference, we will refer to MERS as the defendant herein, recognizing that arguments advanced by MERS were made on behalf of MERS itself as well as the other defendants.
[3] HMH is seeking only the principal amounts paid as employer contributions with regard to its current employees, without any interest. It did not seek transfer of amounts paid on behalf of former employees.
[4] In its appellate brief, MERS states that HMH's employees are specifically entitled to a refund of their accumulated contributions pursuant to LSA-R.S. 11:1759.
[5] The record before us, as well as the record in the companion appeal of Town of Homer, d/b/a Homer Memorial Hospital v. Municipal Employees' Retirement System of Louisiana, 07-1170 (La. App. 1 Cir. 12/21/07)(unpublished) reveals that three HMH employees opted out of the class action and desired to continue participating in MERS.